IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE McCREE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-4908 |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |

**SURRICK, J.**                                                            **JANUARY  22 , 2009**

<u>**MEMORANDUM & ORDER**</u>

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. No. 10), and Plaintiff's Cross Motion to Amend Complaint (Doc. No. 11).  For the following reasons, Defendant's Motion will be granted, and Plaintiff's Motion will be denied.

## I.    FACTUAL BACKGROUND[1]

The Southeastern Pennsylvania Transportation Authority ("Defendant" or "SEPTA") is a municipal authority of the Commonwealth of Pennsylvania that provides public transportation services to the Philadelphia Metropolitan Area.  SEPTA services are provided through its bus, trolley, subway, and regional railroad systems.  On August 16, 2005, at an intersection in South Philadelphia, Marlene McCree ("Plaintiff") attempted to board one of Defendant's buses.  (Pl.'s Dep. at 22.)  Plaintiff was riding in a motorized scooter as a result of recent foot surgery.  (*Id.* at 8, 23-24, 27-28.)  The bus driver therefore deployed a flip-down ramp to the street-level onto which Plaintiff could drive her motorized scooter and board the bus.  (*Id.* at 30, 32; Hickerson

---

[1] In reciting the factual background, we view all facts and inferences in the light most favorable to Plaintiff, the nonmoving party.  *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007) (*citing Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000)) (noting that when deciding a motion for summary judgment, the court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor").

Dep. at 8.)  Plaintiff proceeded to drive up the ramp, facing forward and "moving slow," when she noticed a "lump" or "hump" in the ramp that she "couldn't get past" to enter the bus.  (Pl.'s Dep. at 28, 31-32, 34; *see also* Pl.'s Interrog. ¶ 6(d) ("There was a lump in the ramp of the SEPTA vehicle."))  The bus driver told her to "go back and come back in" and to "come back in faster" so that the wheels of Plaintiff's motorized scooter could clear the hump.  (Pl.'s Dep. at 31-32, 34.)  While Plaintiff was backing up the motorized scooter and situated halfway down the ramp, Plaintiff asked the bus driver if she "was okay to go back," and the bus driver answered in the affirmative.  (*Id.* at 33; *see also* Pl.'s Interrog. ¶ 7(e) ("I asked the driver was I okay to back up[.]  He said yes[.]"))  Plaintiff's motorized scooter then fell off the side of the ramp, and Plaintiff and the scooter landed on the street.[2]  (Pl.'s Dep. at 33, 36.)  At the time of Plaintiff's fall, the bus was stopped and the ramp was motionless.  (*Id.* at 41-42.)  The bus did not move in any way to cause Plaintiff to fall from the ramp.  (*Id.* at 42.)  Plaintiff does not know what caused her to fall.  (*Id.* at 33.)  The bus driver testified that Plaintiff fell because one of the wheels of Plaintiff's motorized scooter hit the side of the ramp as she was backing up.  (Hickerson Dep. at 29.)  Plaintiff was injured in the fall.  She was taken to the hospital emergency room, treated, and released.  (*Id.* at 37; *see also* Pl.'s Interrog. ¶ 15(a).)

## II.    PROCEDURAL HISTORY

On April 15, 2007, Plaintiff filed this lawsuit in the Court of Common Pleas of Philadelphia County.  (*See* Doc. No. 10, Ex. A (Compl.))  In her Complaint, Plaintiff alleges

---

[2] The bus driver testified to a different cause of Plaintiff's backing up, but the difference is not material.  According to the bus driver, the reason he told Plaintiff to back up was because one of her wheels was "in the air" and not grounded on the ramp.  (Hickerson Dep. at 20-21, 29.)  Unlike Plaintiff, the bus driver did not testify about a hump in the ramp.

that:

> The negligence of [Defendant] consisted of but was not limited to the following:
>
> > a.    Failure to properly train . . . employees in the proper means of assisting handicapped individuals in allowing them to enter or exit the vehicle.
> >
> > b.    Failure to properly maintain the vehicle and handicapped equipment.
> >
> > c.    Failure to properly aid [Plaintiff] in entering the vehicle.
> >
> > d.    Allowing [Defendant's] driver to sit on the bus and render no assistance to [Plaintiff] while attempting to enter the vehicle;
> >
> > e.    Failure to use due care.

(Compl. ¶ 11.) On November 16, 2007, at the conclusion of Plaintiff's deposition, Plaintiff's counsel handed Defense counsel a copy of a federal regulation, 49 C.F.R. § 37.165 (2002),[3] that was promulgated under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (*See* Doc. No. 10 ¶ 8; Doc. No. 11 ¶ 8.) Plaintiff's counsel told Defense counsel that it was Plaintiff's position that Defendant violated the federal regulation. (*Id.*) On November 21, 2007, Defendant filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1446(b) (2008). The statute provides, in pertinent part, that a notice of removal may be filed "within thirty days after receipt by the defendant, through service of otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable . . . ." (emphasis added). 28 U.S.C. § 1446(b). Defendant removed the action to this Court asserting that the federal regulation constituted "other paper" under Section 1446(b). (*See* Doc. Nos. 1, 3.)

---

[3] The regulation provides that "[w]here necessary or upon request, [a public or private entity's transportation vehicle] personnel shall assist individuals with disabilities with the use of securement systems, ramps and lifts. If it is necessary for the personnel to leave their seats to provide this assistance, they shall do so." 49 C.F.R. § 37.165.

On December 12, 2007, Plaintiff filed a Motion to Remand arguing that the removal was untimely.  (*See* Doc. No. 2.)  Plaintiff contended that Defendant did not file the notice of removal "within thirty days" after receiving notice of a federal claim, since the Complaint placed Defendant "on notice" seven months earlier of the existence of federal claims under the ADA. (Doc. No. 2 ¶ 11.)  Specifically, Plaintiff contended that "Defendant was on notice of the exact nature of Plaintiff's claim in April 2007 [when the Complaint was filed] and should have removed the case at that time" since "it is inconceivable that Defendant did not understand" that Plaintiff's lawsuit involved a disabled person's use of transportation, and "Defendant is presumed [to be] aware of the laws and statutes governing passengers with disabilities, including Federal laws."  (Doc. No. 2 ¶ 7.)  We denied Plaintiff's Motion to Remand, concluding that the Complaint did not put Defendant on notice of a federal question and finding that "the act of providing Defendant with a copy of the federal regulation, accompanied by an oral representation of an intent to rely upon that regulation, constituted notice of Plaintiff's intent to pursue a federal claim."  (Doc. No. 7.)

Defendant filed the instant Motion seeking summary judgment on Plaintiff's negligence and ADA claims.  (Doc. No. 10.)  Defendant contends that Plaintiff's negligence claim is barred by the doctrine of sovereign immunity.  In addition, Defendant contends that Plaintiff's federal claim under Title II of the ADA fails because there is no evidence of intentional discrimination or discriminatory animus.  Plaintiff filed a Cross Motion to Amend the Complaint "to more fully plead facts in order to adequately allege a violation of the ADA."  (Doc. No. 11 at 7.)

III.    **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine

issue of material fact exists only when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of demonstrating that there are

no facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-24 (1986). Once the moving party carries this initial burden, the nonmoving party must

set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see

also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (explaining

that the nonmoving party "must do more than simply show that there is some metaphysical doubt

as to the material facts"). "The nonmoving party . . . 'cannot rely merely upon bare assertions,

conclusory allegations or suspicions' to support its claim.'" *Townes v. City of Phila.*, No.

00-0138, 2001 WL 503400, at *2 (E.D. Pa. May 11, 2001) (*quoting Fireman's Ins. Co. v.

DeFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). Rather, the party opposing summary judgment

must go beyond the pleadings and present evidence through affidavits, depositions, or

admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. When

deciding a motion for summary judgment, we must view facts and inferences in the light most

favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Siegel Transfer, Inc. v. Carrier

Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). However, we must not resolve factual disputes

or make credibility determinations.[4] *Siegel Transfer*, 54 F.3d at 1127.

---

[4] After Plaintiff's Motion to Remand was denied, the Clerk of Court scheduled the case
for an Arbitration trial on February 18, 2009. (*See* Doc. Nos. 8, 12.) A pretrial conference was
not requested nor was a Scheduling Order entered. Summary judgment is not appropriate until

## IV.     DISCUSSION

### A.     Plaintiff's Negligence Claims

Defendant asserts that it is entitled to summary judgment on Plaintiff's negligence claims based on the Pennsylvania Sovereign Immunity Act, 42 Pa. Cons. Stat. Ann. §§ 8521-8522. Defendant is an agency of the Commonwealth of Pennsylvania that is generally entitled to sovereign immunity under the Sovereign Immunity Act.  *See* 74 Pa. Cons. Stat. Ann. §§ 1711(a), 1711(b)(3) (noting that SEPTA "shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof" and "shall continue to enjoy sovereign and official immunity, as provided [by the statutory provisions that comprise and pertain to the Sovereign Immunity Act]"); *see also Cooper v. SEPTA*, 548 F.3d 296, 307 (3d Cir. 2008) (citing cases in which Pennsylvania state courts have recognized SEPTA to be a Commonwealth agency under the Sovereign Immunity Act); *Jones v. SEPTA*, 772 A.2d 435, 444 (Pa. 2001) (holding SEPTA immune in a tort case because the case did not fall within an exception to the Sovereign Immunity Act); *Feingold v. SEPTA*, 517 A.2d 1270, 1276-77 (Pa. 1986) (finding SEPTA to be

---

the nonmoving party has been afforded a reasonable opportunity to obtain discovery.  *Prisco v. United States*, No. 85-6739, 1990 WL 156319, at *3 (E.D. Pa. Oct. 10, 1990) (*citing Penn Galvanizing Co. v. Lukens Steel Co.*, 59 F.R.D. 74, 80 (E.D. Pa. 1973)); *see also Radich v. Goode*, 886 F.2d 1391, 1393 (3d Cir. 1989) ("The court must give a party opposing summary judgment an adequate opportunity to obtain discovery.").  Plaintiff does not contend that she has not been afforded an adequate opportunity for discovery.  *See Radich*, 886 F.2d at 1393. Moreover, there is no indication in the record that more discovery is needed.  Over the course of a year, the parties have taken depositions and exchanged written discovery.  Plaintiff responded to Defendant's Motion for Summary Judgment.  Plaintiff neither filed a Rule 56(f) motion detailing any discovery needed, nor a separate motion for additional discovery.  *See* Fed. R. Civ. P. 56(f).  This case is therefore ripe for summary adjudication.  *Cf. Johnson v. City of Detroit*, No. 07-13752, 2008 WL 2510184, at *2 (E.D. Mich. Jun. 23, 2008) (denying motion for summary judgment filed prior to the close of discovery where "neither side has conducted any discovery," "[n]o depositions have been taken," and "[n]o Rule 26(a)(1) disclosures have been made and no written discovery has been exchanged").

"an agency of the Commonwealth" against whom "it would be inappropriate to assess punitive damages"). However, sovereign immunity under the Act "is not absolute." *Bottoms v. SEPTA*, 805 A.2d 47, 48 (Pa. Commw. Ct. 2002). The Act includes nine exceptions to sovereign immunity. *See* 42 Pa. Cons. Stat. Ann. § 8522 (listing the nine exceptions). The nine exceptions are as follows: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate highways and sidewalks; (5) potholes and other dangerous conditions on highways; (6) care, custody and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. § 8522(b); *Brown v. Blaine*, 833 A.2d 1166, 1173 n.15 (Pa. Commw. Ct. 2003) (listing the nine exceptions). The exceptions "must be strictly construed and narrowly interpreted." *Bufford v. Pa. Dep't of Transp.*, 670 A.2d 751, 753 (Pa. Commw. Ct. 1996) (citations omitted).

Plaintiff specifically relies on the vehicle liability exception to sovereign immunity in bringing her negligence claim against Defendant.[5] (*See* Doc. No. 11 at 16, *citing* 42 Pa. Cons. Stat. § 8522(b)(1).) The exception for vehicle liability provides that:

> [T]he defense of sovereign immunity shall not be raised to claims for damages caused by:
>
> 1) Vehicle liability – The operation of any motor vehicle in the possession or control of a Commonwealth party. As used in this paragraph, "motor vehicle" means any vehicle which is self-propelled and any attachment thereto[.]

42 Pa. Cons. Stat. § 8522(b)(1). The statute does not define "operation" of a motor vehicle.

---

[5] The only other exception that could possibly apply here is the exception for personal property. However, Pennsylvania courts have not applied the personal property exception to SEPTA buses, holding that "[t]o conclude that a bus is not a motor vehicle but personal property is to ignore the plain language of the vehicle exception." *SEPTA v. Simpkins*, 648 A.2d 591, 457 (Pa. Commw. Ct. 1994); *see also Ross v. SEPTA*, 714 A.2d 1131, 1134 (Pa. Commw. Ct. 1998) (holding same in the context of a SEPTA train).

Defendant contends that "[t]he Pennsylvania Supreme Court and Pennsylvania Commonwealth Court have stated that the term 'operation' as found in § 8522(b)(1) of the vehicle liability exception to sovereign immunity encompasses only those situations where the injury results from either the vehicle moving or from a moving part of the vehicle."  (Doc. No. 10 ¶ 30.)  Defendant cites a number of cases for this proposition.  *See Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127, 128 (Pa. 1999); *White v. Sch. Dist. of Phila.*, 718 A.2d 778, 780 (Pa. 1998); *Love v. City of Phila.*, 543 A.2d 531, 533 (Pa. 1988); *Mosley v. SEPTA*, 842 A.2d 473, 476 (Pa. Commw. Ct. 2003); *Miller v. Erie MTA*, 618 A.2d 1095, 1097 (Pa. Commw. Ct. 1992), *appeal denied*, 644 A.2d 165 (Pa. 1994); *Bottoms*, 805 A.2d at 50; *Greenleaf v. SEPTA*, 698 A.2d 170, 173 (Pa. Commw. Ct. 1997); *Bazemore v. SEPTA*, 657 A.2d 1323, 1327 (Pa. Commw. Ct. 1995); *Simpkins*, 648 A.2d at 591; *Hall v. SEPTA*, 596 A.2d 1153, 1156 (Pa. Commw. Ct. 1991); *see also Lee v. SEPTA*, 418 F. Supp. 2d 675, 682 (E.D. Pa. 2005) ("The Pennsylvania Supreme Court has addressed the scope of the motor vehicle exception in several decisions and has consistently held that the exception for the 'operation' of a motor vehicle, including a passenger bus, pertains only to actions taken while the vehicle is in motion and does not refer to the loading and unloading of passengers.").

We agree that the vehicle liability exception applies only when the injury results from the vehicle moving or from a moving part of the vehicle.  The case of *Love v. City of Philadelphia* is instructive.  543 A.2d at 531.  In *Love*, the plaintiff, an elderly woman, fell as she was alighting from the steps of a van owned by the City of Philadelphia.  *Id.*  The plaintiff alleged that the City's negligence caused her injuries, and a jury found in the plaintiff's favor.  *Id.* at 532.  On appeal, the Pennsylvania Supreme Court affirmed the Commonwealth Court's reversal of the

jury's verdict, finding that the facts of the case did not fall under the vehicle liability exception.

*Id.* In reaching its decision, the Supreme Court observed that the vehicle liability exception does not define the term "operation" and it therefore construed the word according to its common usage:

> [T]o operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle. Thus, according to the common and approved usage of the word "operation," the van was not in operation at the time of [the plaintiff's] accident. Getting into or alighting from a vehicle are merely acts ancillary to the actual operation of the vehicle.

*Id.* at 533 (emphasis in original). Courts applying *Love* have consistently held that "operation" of a vehicle under Section 8522 does not apply when a passenger is merely entering into or alighting from a stationary bus. *See, e.g.*, *Bazemore*, 657 A.2d at 1323 (passenger's injury sustained from tripping on steps when exiting bus did not satisfy exception for vehicle liability under Section 8522); *Rubenstein*, 668 A.2d at 283 (bus driver's failure to recognize uneven ground at point of departure, allegedly contributing to the plaintiff's injuries, did not satisfy exception for vehicle liability); *Berman v. SEPTA*, 698 A.2d 1362, 1364 (Pa. Commw. Ct. 1997) ("Many acts, such as . . . providing assistance to passengers who need help getting on or off the bus, are all *associated with* operating a bus. Nonetheless, they are not themselves 'operation[.]' Rather they . . . are acts 'ancillary to the actual operation of the vehicle.'") (emphasis in original) (citations omitted).

The case of *Bottoms v. SEPTA* is similarly instructive. 805 A.2d at 50. In *Bottoms*, the plaintiff brought a negligence action against SEPTA alleging that the bus driver failed to lower the steps closer to the ground using the bus's "kneeling" mechanism, causing the plaintiff to fall while alighting from the bus. *Id.* at 48. The plaintiff argued that the driver's failure to engage

the "kneeling" mechanism satisfied the vehicle liability exception. *Id.* at 51.  The trial court

disagreed and granted summary judgment in favor of SEPTA. *Id.* at 48.  On appeal, the

Commonwealth Court affirmed the trial court's grant of summary judgment, concluding that "[i]t

was not a movement of the bus itself that caused [the plaintiff] her injury. . . . The SEPTA bus

was standing still, at a curb, discharging passengers; it was not 'in operation' as required for the

vehicle liability exception to apply." *Id.*; *see also Regester v. County of Chester*, 797 A.2d 898,

903 n.7 (Pa. 2002) (reaffirming *Love* and noting that failure to provide adequate assistance to an

alighting passenger "falls within the general conferral of governmental immunity and outside the

vehicle liability exception").

       The vehicle liability exception may apply, however, if movement of only a part of the

vehicle causes an injury.  *See Sonnenberg v. Erie MTA*, 586 A.2d 1026, 1028 (Pa. Commw. Ct.

1991).  In *Sonnenberg*, the plaintiff was alighting from the rear door of a bus when the door

suddenly closed, striking her in the back and locking her into a position, causing injury. *Id.* at

1027.  The bus driver heard the plaintiff's cries and released the door. *Id.*  The plaintiff brought

a negligence action under the vehicle liability exception. *Id.*  The trial court determined that the

vehicle liability exception did not apply because the stationary bus was not "in operation" when

the plaintiff was injured, and granted summary judgment in favor of the defendant. *Id.*  The

Commonwealth Court reversed, finding that the plaintiff's injuries "are alleged to have been

directly caused by a moving part of [the defendant's] bus." *Id.* at 1028.  The court noted that

"[t]he movement of parts of a vehicle, or an attachment to a vehicle, is sufficient to constitute

'operation.'" *Id.*; *see also Bottoms*, 805 A.2d at 50 (noting that although generally the entire

vehicle is moving in order for the vehicle liability exception to apply, "a moving part, such as a

bus door, has been found to be 'in operation'").

In this case, Plaintiff was boarding a stationary bus using a motionless wheelchair ramp. (*See* Pl.'s Dep. at 41, stating that the bus was "stopped" and "in a steady position" and the ramp was "motionless.") As the plaintiffs' alighting from stationary vehicles in *Love* and *Bottoms* was ancillary to the operation of the vehicles, Plaintiff's boarding of the stationary bus here with the assistance of a motionless wheelchair ramp is "ancillary to the actual operation of the vehicle." *See Love*, 543 A.2d at 533; *Bottoms*, 805 A.2d at 50; *see also Bazemore*, 657 A.2d at 1323 (passenger's injury sustained from tripping on steps when exiting bus did not satisfy exception for vehicle liability); *Berman*, 698 A.2d at 1364 (holding that the act of "providing assistance to passengers who need help getting on . . . the bus . . . are not themselves 'operation'" and are instead "ancillary"). Plaintiff contends that these cases are distinguishable since they do not involve "a disabled person who is trying to negotiate a wheelchair lift ramp." (Doc. No. 11 at 16.) This is a distinction without a difference. Regardless of whether Plaintiff fell on a motionless wheelchair ramp or on motionless steps like the passengers in *Love*, *Bottoms*, and *Bazemore*, there is no dispute that the bus was not moving when Plaintiff fell, and that Plaintiff was not injured by any moving parts. Plaintiff asserts that her case is unique because Defendant owed her "the highest degree of care." (*See* Doc. No. 11 at 17.) Defendant's duty is irrelevant, however, if the underlying negligence action fails to satisfy any of the exceptions to sovereign immunity. Plaintiff further asserts that "the bus and the passenger were both special" since the bus was not "just a regular bus picking up ambulatory passengers." It appears from the evidence in the record that the bus was indeed "just a regular bus" that also picked up ambulatory passengers. (*See, e.g.*, Pl.'s Dep. at 27-28, stating that Plaintiff was boarding a Route C bus; *id.*

at 30, stating that other passengers "already got on" before Plaintiff boarded; Hickerson Dep. at 22, stating that other passengers were "getting off the bus to assist [Plaintiff]"; *id.* at 7, acknowledging that "all SEPTA buses come handicapped equipped.")  In any event, Plaintiff's argument is unavailing since Plaintiff admits that her injury occurred when the bus and wheelchair ramp were motionless.

In an attempt to show some evidence of motion or a moving part, Plaintiff asserts that the bus driver testified that "the kneeler and ramp were actively running at the time of the accident." (*See* Doc. No. 11 at 18; Hickerson Dep. at 16-18, 27.)  Plaintiff misstates the testimony.  The bus driver testified to taking several discrete actions involving operation of the kneeler and ramp before Plaintiff boarded the bus:

> Q:  What's the next step that you take after you go through where the ramp will be positioned?
> A:  Bringing – aligning the bus up to where the wheelchair person is, putting the vehicle in neutral, parking brake, hitting the kneeler button first, and then hitting the ramp button.  The kneeler is lowering the bus.  And then the ramp button is lowering the bus even further, if possible.  And then deploying the ramp.
> . . .
> Q:  The ramp th[e]n lowers itself onto either the street or the pavement?
> A:  Yes.
> Q:  And then what happens after that?
> A:  Then it's time for the wheelchair person to come on up.
> Q:  In theory, the person would come up the ramp on the wheelchair?
> A:  Yes.
> Q:  Where does that leave the person? . . .
> A:  They are right there facing me by the fare box.
> Q:  And then what would you do at that particular point in time, in theory? . . .
> A:  Well, I would get out of the seat and go out and lift the two seats up where they're going to be positioned, and then strap the person in, come back to my seat, and then hit the kneeler button, and then hit the ramp button for it to deploy back inside the bus.
>
> Q:  Do you have to help position the person in the wheelchair into the seat before you hit the kneeler button and the ramp button again?

12

. . .
A:      Yes, I position them into their little space, and then I strap them in.
Q:      Before you raise the bus and bring the ramp up?
A:      Yes.

(Hickerson Dep. at 16-18.)  Thus, the bus driver testified to three basic steps:  first, the driver

engages the kneeler and the ramp; second, the passenger in the wheelchair ascends the ramp to

board the bus, at which point the driver positions the person in the designated seating area and

"strap[s] them in"; and third, the driver returns the kneeler and ramp to position.  (*See id.*)

Plaintiff's injury occurred during step two, after the kneeler and ramp performed their operations

but before Plaintiff entered the bus.  The kneeler and ramp were "actively running" only in the

sense that the bus driver had lowered the bus and deployed the ramp to a resting, motionless

position, not unlike a set of steps.  Plaintiff points to the SEPTA Operator's Guide for the

proposition that the ramp is within "the operation" cycle when the ramp is deployed.  (*See* Doc.

No. 11, Ex. F, at 142.)  Regardless of the nomenclature, it is undisputed that the ramp of the

stationary bus was not moving any more than the steps of the stationary buses were moving in

*Love*, *Bottoms*, and *Bazemore*.  The only difference is that the passengers in those cases were

using stairs while Plaintiff here was using a ramp.  The vehicle liability exception does not apply

to these facts.  Moreover, the actions of which Plaintiff complains appear to be more associated

with the bus driver's actions in assisting or failing to assist Plaintiff than with the physical

operation of the bus.  *See Regester*, 797 A.2d at 903.  In *Regester*, the plaintiff telephoned the

township's emergency medical services after the decedent suffered a heart attack.  *Id.* at 899.

Dispatchers provided the responding paramedics with accurate driving directions, but the

paramedics got lost due to their unfamiliarity with the geographic area.  *Id.* at 900.

Consequently, the paramedics arrived too late to revive the decedent.  *Id.*  The decedent's estate

brought a negligence action against the county and township under the vehicle liability exception alleging that the paramedics negligently failed to familiarize themselves with the geographic area.  *Id.*  The trial court granted summary judgment in favor of the defendants, holding, inter alia, that the vehicle liability exception did not apply since the ambulance was not driven in a negligent manner and no causal relationship existed between its physical operation and the plaintiff's injury.  *Id.* at 901.  On appeal, the Commonwealth Court affirmed the grant of summary judgment with respect to the vehicle liability exception.  *Id.*  The Pennsylvania Supreme Court allowed an appeal "on a limited basis to address the application of the vehicle liability exception to governmental immunity."  *Id.* at 902.  The Court then affirmed the grant of summary judgment, stating:

> the Commonwealth Court correctly concluded that the form of negligence alleged by [the plaintiff] does not qualify [under the vehicle liability exception].  To the contrary, such allegations of negligence on the part of [the paramedics] in failing to maintain adequate familiarity with the emergency service area and follow provided directions is more closely associated with the public service involved (ambulance service) than it is with the physical operation of the vehicle as such.

*Id.* at 904.  The court rejected a "general rule to the effect that all negligent decision making of government actors occurring within the course of the operation of a vehicle" falls under the vehicle liability exception.  *Id.* at 903.  Such conduct is "more closely associated with the panoply of public functions served by government vehicles than with the physical operation of the vehicle itself."  *Id.* at 904.

Here, Plaintiff alleges negligent decision-making by Defendant's bus driver.  Plaintiff asserts that she suffered injuries as a result of the bus driver's decision not to leave his seat or provide Plaintiff with other assistance in boarding the bus.  The bus driver's failure to assist Plaintiff "is more closely associated with the public service involved" – in this case, public

14

transportation – "than it is with the physical operation of the vehicle as such." *Regester*, 797 A.2d at 904.  There is no evidence that the bus was driven or otherwise operated in a negligent manner, and, as in *Regester*, there is no evidence of a causal relationship between the vehicle's physical operation and Plaintiff's injury.  *See id.* at 901.

We are satisfied that the vehicle liability exception does not apply in this case.  We will therefore grant Defendant's Motion for Summary Judgment as to Plaintiff's negligence claims.[6]

### B.     Plaintiff's Federal Claim under the ADA

Defendant moves for summary judgment on Plaintiff's ADA claim on two related grounds.

### 1.     *Failure to Allege Intentional Discrimination in the Complaint*

First, Defendant argues that summary judgment is appropriate on Plaintiff's ADA claim because the Complaint fails to allege intentional discrimination.  Plaintiff maintains that she filed her Complaint as a state court action and that "obviously, her Complaint [was] not written to contain any averments concerning the ADA," but that because "[D]efendant has removed [P]laintiff to the federal forum" she should be granted leave to amend the Complaint "in order to conform with the pleading requirements of the ADA."  (Doc. No. 11 at 14.)  We are presented here with a motion for summary judgment, not a motion to dismiss under Federal Rule of Civil

---

[6] Plaintiff's other negligence claims, such as failure to train and failure to properly maintain equipment, similarly do not fall within the vehicle liability exception or any other exception to sovereign immunity.  *See, e.g.*, *Clark v. SEPTA*, 691 A.2d 988, 992 (Pa. Commw. Ct. 1997), *appeal denied*, 704 A.2d 640 (Pa. 1997) (failure to train or properly supervise subordinate not within any of the enumerated exceptions to sovereign immunity); *Simpkins*, 648 A.2d at 593 (failure to maintain steps and remedy defective conditions on steps of SEPTA bus did not fall within vehicle liability exception, since plaintiff did not allege that "injuries were caused by the movement of the vehicle or by the movement of any part of the vehicle").

Procedure 12(b)(6).  We must therefore determine whether Plaintiff's ADA claim is ripe for summary adjudication when the parties have litigated and briefed the ADA claim at the summary judgment stage of the case, but when the Complaint does not technically plead such a claim.

The function of a complaint "is to give defendants fair notice of plaintiffs' claims and the grounds on which they rest and to show why the plaintiff is entitled to relief."  *United States v. City of Phila.*, 644 F.2d 187, 206 (3d Cir. 1980); *see also Hull v. Fleetwood Enter., Inc.*, No. 06-1669, 2007 WL 917088, at *2 (W.D. Pa. Mar. 21, 2007) (*citing Continental Collieries v. Shober*, 130 F.2d 631, 635 (3d. Cir. 1942) (holding same)); *Rueda v. Amerifirst Bank*, No. 90-3986, 1991 WL 25565, at *3 (E.D. Pa. Feb. 25, 1991) (*citing Conley v. Gibson*, 355 U.S. 41, 47 (1957) (noting same)).  During and after trial, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."  Fed. R. Civ. P. 15(b)(2).[7]  Thus, courts may treat an issue that is tried by consent, "squarely presented and foisting no surprise on any party," as included in a constructively amended complaint "even though no technical amendment was ever made."  *Nanavati v. Burdette Tomlin Mem. Hosp.*, 857 F.2d 96, 104 (3d Cir. 1988) (citations omitted); *see also Douglas v. Owens*, 50 F.3d 1226, 1236 (3d Cir. 1995) (holding amendment permitted under Rule

---

[7] Federal Rule of Civil Procedure 15(b) provides, in full, that during and after trial:

> When an issue not raised by the pleadings is tried by the parties'
> express or implied consent, it must be treated in all respects as if
> raised in the pleadings.  A party may move – at any time, even after
> judgment – to amend the pleadings to conform them to the evidence
> and to raise an unpleaded issue.  But failure to amend does not affect
> the result of the trial of that issue.

Fed. R. Civ. P. 15(b).

16

15(b) if tried by express or implied consent of parties).

The Court of Appeals for the Third Circuit has not addressed the issue of whether Rule 15(b) allows for the constructive amendment of a complaint at the summary judgment stage of a case.  District courts within the Third Circuit appear to have split on the issue.  *Compare McGovern v. City of Jersey City*, No. 98-5186, 2008 WL 58820, at *3 n.1 (D.N.J. Jan. 2, 2008) (noting under Rule 15(b) that "the fact that the parties addressed both sets of allegations on summary judgment evidences the parties' implied consent to adjudicate the allegations as if they had been specifically alleged in the . . . Complaint") *and Parker v. Phila. Newspapers, Inc.*, 322 F. Supp. 2d 624, 629 (E.D. Pa. 2004) ("There is no reason why the logic of Rule 15(b) should not apply with equal force to issues raised in the summary judgment context.") *with Vosgerichian v. Commodore Int'l, Ltd.*, No. 92-4867, 1998 WL 966026, at *3 (E.D. Pa. Nov. 6, 1998), *aff'd*, 191 F.3d 446 (3d Cir. 1999) (*citing Albanese v. Bergen County*, 991 F. Supp. 410, 421 (D.N.J. 1997) ("Rule 15(b) . . . is limited to situations where the issue has been tried. [Where] no trial has occurred, [the plaintiff] can find no solace in Rule 15(b)."); *United States v. 2001 Honda Accord*, 245 F. Supp. 2d 602, 612 (M.D. Pa. 2003) (same); *Wilson v. Dep't of Corr. of Del.*, No. 99-0614, 2001 WL 845652, at *3 (D. Del. Jul. 24, 2001) (same).

The Circuit Courts are also split on the issue, though the majority of Circuit Courts have concluded that Rule 15(b) applies at the summary judgment stage.  *Compare Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 569 (2d Cir. 2000) (applying Rule 15(b) at the summary judgment stage); *Canion v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987) (same); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1030 (6th Cir. 1992) (same); *Walton v. Jennings Cmty. Hosp. Inc.*, 875 F.2d 1317, 1320 n.3 (7th Cir. 1989) (same); *Jackson v. Hayakawa*, 605 F.2d

17

1121, 1129 (9th Cir. 1979) (same); *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275,

1279-80 (10th Cir. 1998) (applying Rule 15(b) to a defense raised in a motion for summary

judgment) *and Kulkarni v. Alexander*, 662 F.2d 758, 762 (D.C. Cir. 1978) (noting that Rule

15(b)'s "general principle" has been applied at summary judgment stage), *with Crawford v.

Gould*, 56 F.3d 1162, 1168-69 (9th Cir. 1995) ("The present case did not go to trial; it was

decided on motions for summary judgment.  Therefore, the situation which Rule 15(b) addresses

simply did not arise in the present case."); *Blue Cross Blue Shield v. Weitz*, 913 F.2d 1544, 1550

(11th Cir. 1990) (Rule 15(b) is "inapposite" when a case is decided on summary judgment);

*Harris v. Dep't of Veterans' Affairs*, 126 F.3d 339, 344 n.3 (D.C. Cir. 1997) (noting that Rule

15(b) does not apply when case does not reach trial); and *Indep. Petroleum Ass'n. of Am. v.

Babbitt*, 235 F.3d 588, 596 (D.C. Cir. 2001) ("It is an open question whether the Federal Rules

permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary

judgment motions.").

   We are persuaded that under the circumstances here, Rule 15(b) provides for constructive

amendment of the Complaint to include Plaintiff's ADA claim since the parties were on notice of

the claim for over a year, litigated the claim after Plaintiff asserted it, and addressed the merits of

the claim in their summary judgment briefing.[8]  *See* Fed. R. Civ. P. 1 (2008) (stating that rules of

---

   [8] Judge Posner writes that courts should avoid using the word "constructive" under Rule
15(b), because when "the issue that wasn't in the complaint [is] pretried [at a motion for
summary judgment], without objection by either party, it doesn't matter that it wasn't mentioned
in the complaint."  *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 877-78 (7th Cir. 2005)
(Posner, J.).  Judge Posner further writes that, "[w]hen issues not mentioned in the complaint . . .
are nevertheless litigated with the consent of the parties, the complaint is not 'constructively
amended'; it is simply an irrelevance so far as those issues are concerned."  *Id.* at 878.  Though
we use the word "constructive" in this Opinion for the sake of comity with other jurisdictions,
we agree that the absence of Plaintiff's ADA claim in the Complaint is irrelevant, as we explain

procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998) ("Because both parties squarely addressed the strict liability theory in their summary judgment briefs, the complaint was constructively amended to include that claim."); *Miles Hickman v. David Powers Homes, Inc.*, No. 07-0754, 2008 WL 5188726, at *12 (S.D. Tex. Dec. 9, 2008) (citation omitted) ("[Rule 15(b)] applies at the summary judgment stage, as well as at trial."); *Minix v. Canarecci*, No. 05-0144, 2007 WL 1970936, at *4 (N.D. Ind. July 3, 2007) (citation omitted) ("One way parties impliedly agree to an issue not included in the complaint is by addressing the issue at summary judgment."); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 217 (E.D.N.Y. 2005) (citations omitted) ("When both parties squarely address a claim in their summary judgment briefs, it may be argued that the complaint was constructively amended pursuant to [Rule]15(b)."); *In re Lott*, 363 B.R. 835, 837 (Bankr. N.D. Ohio 2006) (noting that although Rule 15(b) "is not specifically made applicable to the summary judgment phase of litigation, it has been held when 'both parties squarely address a claim in their summary judgment briefs, . . . the complaint was constructively amended'"); *see also Handzlik v. United States*, 93 Fed. App'x 15, 17 (5th Cir. 2004) (unpublished opinion) (noting same).  It was Plaintiff's voluntary act of pursuing the ADA claim that triggered Defendant's removal and this Court's federal question jurisdiction.  Over a year ago, Plaintiff's counsel handed Defense counsel a copy of a federal regulation promulgated under the ADA and told Defense counsel that Plaintiff intended to rely on the federal regulation in pursuing her case.  The parties do not

---

more fully above, since the claim has been litigated and presented for summary adjudication without objection by either party.

19

dispute these facts.  (*See* Doc. No. 10 ¶ 8; Doc. No. 11 ¶ 8.)  Plaintiff's counsel even questioned

Defendant's bus driver during a deposition about his knowledge of "federal codes" as they relate

to wheelchair ramps.  (Hickerson Dep. at 24.)  After Defendant had removed the case to this

Court, Plaintiff moved to remand on grounds that the ADA claim was so obvious in the

Complaint that Defendant was "on notice" of it seven months earlier, making the removal

untimely.  (Doc. No. 2 ¶ 7.)  The parties addressed Plaintiff's ADA claim again in their summary

judgment briefing, in which Plaintiff argues that evidence of discriminatory intent "is of no

consequence" to the validity of the federal claim.  (Doc. No. 11 at 15.)  Thus, this is not a case

where either party had doubts about the existence of a federal claim.  *See Schultz v. Cally*, 528

F.2d 470, 474-75 (3d Cir. 1975) (refusing to apply Rule 15(b) to constructively amend pleadings

where doubt existed as to whether defendants would have agreed to the existence of federal

question jurisdiction).  Moreover, this is not a case where the plaintiff is seeking to amend the

Complaint to add claims that the parties did not consent to litigating.  Under the facts presented,

we find that Plaintiff's ADA claim is ripe for summary adjudication.  We join the vast majority

of the Circuit Courts of Appeals and several courts from this District in applying Rule 15(b) at

the summary judgment stage of the case.  *See, e.g.*, *Cruz*, 202 F.3d at 569; *Canion*, 817 F.2d at

1193; *Smith*, 953 F.2d at 1030; *Walton*, 875 F.2d at 1320 n.3; *Jackson*, 605 F.2d at 1129; *Suiter*,

151 F.3d at 1279-80; *Kulkarni*, 662 F.2d at 762; *McGovern*, 2008 WL 58820, at *3 n.1; *Parker*,

322 F. Supp. 2d at 629.  Plaintiff's request for leave to amend the Complaint will be denied as

moot.

2.       *Sufficiency of the Evidence of Intentional Discrimination*

Defendant asserts that summary judgment is appropriate on Plaintiff's ADA claim since

claims for compensatory damages under Title II of the ADA require a showing of intentional

discrimination, and there is no such evidence in the record.  Under Title II, "no qualified

individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs or activities of a public entity, or be subjected

to discrimination by any such entity."[9]  42 U.S.C. § 12132.  To prevail on a claim for a violation

of Title II of the ADA, Plaintiff must show that:  (1) she is a qualified individual with a

disability; (2) she was either excluded from or otherwise denied the benefits of some public

entity's services, programs or activities, or was otherwise discriminated against by the public

entity; and (3) such exclusion, denial of benefits or discrimination was by reason of the

plaintiff's disability.  *See Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006)

(reciting elements); *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3d Cir. 1999) (same);

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (same).  Plaintiff

specifically relies on a federal regulation promulgated under the ADA.  The federal regulation on

which Plaintiff relies provides that "[w]here necessary or upon request, [a public or private

entity's transportation vehicle] personnel shall assist individuals with disabilities with the use of

. . . ramps[.]  If it is necessary for the personnel to leave their seats to provide this assistance,

they shall do so."  49 C.F.R. § 37.165.  Plaintiff proffers evidence that Defendant's bus driver

told her it was "okay" to proceed back down the ramp when he saw that one of her wheels was

---

[9] It is not clear whether Plaintiff is "a qualified individual with a disability" since Plaintiff was confined to a wheelchair for only a matter of months while recovering from foot surgery. *See Rinehimer v. Cemcolift, Inc.,* 292 F.3d 375, 380 (3d Cir. 2002) (noting that "a temporary, non-chronic impairment of short duration is not a disability" under the ADA); *McDonald v. Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg.").  Counsel did not discuss this issue.

"in the air," and that Defendant's bus driver never left his seat to assist Plaintiff, as the regulation requires. (Pl.'s Dep. at 33; Hickerson Dep. at 21; Pl.'s Interrog. ¶ 7(e)).

The Third Circuit has not yet spoken on the issue of compensatory damages under Title II, "but all other Circuit Courts of Appeals addressing the issue have held that compensatory damages are unavailable absent a showing of intentional discrimination." *Meadows v. Hudson Cty. Bd. of Elections*, No. 04-3979, 2006 WL 2482956, at *10 (D.N.J. Aug. 24, 2006) (*citing Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Wood v. President and Trs. of Spring Hill Coll.*, 978 F.2d 1214, 1220 (11th Cir. 1992); *Carter v. Orleans Parish Pub. Schs.*, 725 F.2d 261, 264 (5th Cir. 1984) (per curiam)). District courts within the Third Circuit have reached the same conclusion. *See, e.g.*, *Meadows*, 2006 WL 2482956 at *10; *Bowers v. NCAA*, No. 97-2600, 2001 WL 1850089, at *2 (D.N.J. Feb. 6, 2001); *Adelman v. Dunmire*, No. 95-4039, 1996 WL 107853, at *4 (E.D. Pa. Mar. 12, 1996) (*citing Tafoya v. Bobroff*, 865 F. Supp. 742, 748 (D.N.M. 1994)); *Douris v. Bucks Cty. Off. of Dist. Atty.*, 2004 WL 1529169, at *5 n.7 (E.D. Pa. 2004), *aff'd*, 150 Fed. App'x 113 (3d Cir. 2005). We agree that Plaintiff must show intentional discrimination in order to recover money damages under Title II of the ADA. *See Dorsett v. SEPTA*, No. 04-5968, 2005 WL 2077252, at *5 (E.D. Pa. 2005) ("In order to obtain compensatory damages for a Title II violation, a plaintiff must demonstrate intentional discrimination.").

Defendant asserts that there is no evidence that Defendant intentionally discriminated against Plaintiff and, thus, Plaintiff may not maintain this ADA claim for compensatory damages. (Doc. No. 10 at unnumbered 22.) Defendant is correct. Plaintiff proffers no evidence to support an inference that the bus driver acted intentionally, that the bus driver acted by reason

of Plaintiff's disability, or that the bus driver's conduct was not confined to this single occasion. *Dorsett* is instructive in this regard. *See* 2005 WL 2077252, at *5. In *Dorsett*, the plaintiff was confined to a wheelchair and regularly used SEPTA for transportation. *Id.* at *1. The plaintiff "took approximately 760 rides on SEPTA buses, and received good service from SEPTA in a majority of cases." *Id.* However, the plaintiff also experienced over a dozen "incidents of poor service" in which the plaintiff received less assistance than that to which he was entitled. *Id.* For example, there were three incidents where the plaintiff was unable to access the bus using the wheelchair lift, three incidents where the plaintiff received no assistance securing the wheelchair, four incidents where the assistance was insufficient, and two incidents where bus drivers were discourteous. *Id.* at *2-*3. The plaintiff asserted that federal regulations promulgated under the ADA required SEPTA to train drivers "to treat individuals with disabilities . . . in a respectful and courteous way" and "to operate vehicles and equipment safely." *Id.* at *5. The court found no evidence of intentional discrimination, since the plaintiff never experienced a repeat incident with the same SEPTA driver, SEPTA investigated the plaintiff's complaints, and SEPTA reminded drivers of their responsibilities to assist the disabled. *Id.* at *6. Summary judgment was granted in favor of SEPTA. *Id.* at *7.

Here, the record shows that Plaintiff "asked for help" from the bus driver on a single occasion and "he never got out of his seat to assist [her]." (Pl.'s Interrog. ¶ 7(e)). However, as in *Dorsett*, there is no evidence of intentional discrimination. *See* 2005 WL 2077252, at *5. On the contrary, the record shows that Defendant's bus driver instructed Plaintiff on how to board the bus using the ramp – either by notifying Plaintiff that her wheel was not on the ramp, as the bus driver testified (Hickerson Dep. at 20); or by instructing Plaintiff to drive over a "hump" in

the ramp at a faster speed, as Plaintiff testified, since she was moving "slow" (Pl.'s Dep. at 28-29, 32.)[10]  The record also shows that all of Defendant's buses are handicapped-equipped, and Defendant has in place policies and procedures designed to ensure proper accommodation of passengers like Plaintiff who use mobility devices.  (Hickerson Dep. at 7; Doc. No. 11, Ex. E.)  In fact, before the incident, Defendant provided the bus driver with a "whole day" of instruction on how to operate the wheelchair ramp that Plaintiff used.  (Hickerson Dep. at 10-11.)  Moreover, as in *Dorsett*, there is no evidence of any repeat incident with the SEPTA driver.  *See* 2005 WL 2077252, at *5.  There is also no evidence to show that Plaintiff made complaints from which it could be determined that SEPTA was deliberately indifferent to Plaintiff's needs.  The ADA regulations "do not contemplate perfect service for wheelchair-using bus commuters."  *Id.* (*citing Midgett v. Tri-Cty. Metro. Transp. Dist. of Or.*, 254 F.3d 846, 849 (9th Cir. 2001)).  "Occasional problems, without more, do not constitute a violation of the ADA."  *Id.*  At most, the evidence demonstrated that Defendant acted negligently on a single occasion.  There is no evidence in the record that Defendant acted with discriminatory animus or in deliberate indifference.[11]

---

[10] Accepting either version of events as true, there is no evidence that the bus driver declined to help Plaintiff with a discriminatory intent.

[11] Even if Defendant violated the ADA regulation, such a violation does not subject Defendant to liability under Pennsylvania law.  For the reasons discussed above, the vehicle liability exception does not apply to subject Defendant to a negligence claim.  In addition, violation of an ADA regulation may not be used as evidence of negligence *per se* in a personal injury action like this one.  *See Levin v. Dollar Tree Stores, Inc.*, No. 06-0605, 2006 WL 3538964, at *2 (E.D. Pa. Dec. 6, 2006) (holding that the plaintiff may not "borrow"ADA regulations for use as evidence of the standard of care to prove negligence *per se* in a personal injury action, since to do so would "allow for recovery of damages for personal injuries for violations of the ADA, which are specifically not permitted under the ADA itself").

Finally, we reject Plaintiff contention that Defendant "has removed the element of 'intent' when it comes to violations of the ADA" merely because the SEPTA Bus Operations Rules and Regulations Manual states that "any refusal by an employee to assist a disabled person is a violation of the ADA, whether intentional or not." (Doc. No. 11 at 15.) What constitutes a compensable violation of the ADA is determined by Congress and the courts. SEPTA's characterization of what the ADA requires is not determinative. Plaintiff's ADA claim for compensatory damages is therefore without merit. Plaintiff has not requested any other form of relief.[12]

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate Order follows.

---

[12] Although equitable remedies for violations of the ADA are available regardless of Defendant's intent, Plaintiff's ADA claim fails even if Plaintiff had requested equitable relief. Plaintiff was confined to the motorized scooter for several months in 2005, but Plaintiff no longer uses a motorized scooter and there is no evidence that Plaintiff encountered any similar instances with Defendant's buses. (Pl.'s Dep. at 18-19, 40-41.) Thus, Plaintiff proffers no evidence of an immediate threat of future harm. *See Dorsett*, 2005 WL 2077252, at *6 ("With respect to an injunction, Plaintiffs must demonstrate that they face an immediate threat of continued future violations of the ADA in the absence of injunctive relief.").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARLENE McCREE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-4908 |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | |

## **ORDER**

AND NOW, this   22nd   day of January, 2009, upon consideration of Defendant's

Motion for Summary Judgment (Doc. No. 10), and Plaintiff's Cross Motion to Amend

Complaint (Doc. No. 11), it is ORDERED as follows:

1.      Defendant's Motion for Summary Judgment IS GRANTED and Plaintiff's

Complaint is DISMISSED.

2.      Plaintiff's Cross Motion to Amend Complaint is DENIED as moot.

IT IS SO ORDERED.

BY THE COURT:

_____

R. Barclay Surrick, J.